Sprint Communications Co., L.P. v City of N.Y. Dept. of Fin. (2017 NY Slip Op 05194)





Sprint Communications Co., L.P. v City of N.Y. Dept. of Fin.


2017 NY Slip Op 05194


Decided on June 27, 2017


Appellate Division, First Department


Sweeny, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 27, 2017
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

John W. Sweeny, Jr.,J.P.
Angela M. Mazzarelli
Karla Moskowitz
Sallie Manzanet-Daniels
Barbara R. Kapnick, JJ.


154499/14 4165 

[*1]Sprint 
 Communications Company, L.P., Plaintiff-Appellant,
v
The City of New York Department of Finance, et al., Defendants-Respondents.



Plaintiff appeals from an order of the Supreme Court, New York County (Lynn R. Kotler, J.), entered April 27, 2016, which denied its motion for summary judgment declaring that it is subject to the supervision of the New York State Department of Public Service and is therefore liable for the City utility tax and not the City unincorporated business income tax, and granted defendants' motion for summary judgment declaring that plaintiff is not a utility within the meaning of the City utility tax code and is therefore liable for both the utility tax and the unincorporated business income tax.




Morrison & Foerster LLP, New York (Hollis L. Hyans and Michael J. Hilkin of counsel), for appellant.
Zachary W. Carter, Corporation Counsel, New York (Kevin R. Harkins, Vincent D'Orazio, Andrew G. Lipkin and Andrea M. Chan of counsel), for respondents.



SWEENY, J.


In this appeal we are called upon to interpret the words of the New York City Administrative Code provisions relating to the taxation of communications companies. For the reasons that follow, we conclude that plaintiff is not a utility within the meaning of the Administrative Code and is therefore not exempt from the unincorporated business income tax.
The Administrative Code of City of New York (Admin Code) provisions under consideration are title 11, ch 11 (the Utility Tax) and Admin Code title 11, ch 5 (the Unincorporated Business Income Tax). Admin Code § 11-1102(a) provides that every utility and every vendor of utility services shall pay an excise tax based upon a percentage of its gross income. Section 11-1101(6) defines a "utility" as "[e]very person subject to the supervision of the department of public service." The Code further defines a "[v]endor of utility services" as "[e]very person not subject to the supervision of the department of public service, and not otherwise a utility as defined in [§ 11-1101(6)], who furnishes or sells . . . telecommunication services" (§ 11-1101[7]).
The Unincorporated Business Income Tax (UBT), in contrast to the Utility Tax, is based upon "taxable income" (Admin Code § 11-505). A "utility" subject to the Utility Tax is exempt from the UBT (§ 11-502[a]). Conversely, a "vendor of utility services" is liable under both the Utility Tax and the UBT (see id.).
The Public Service Commission (PSC) is the part of the Department of Public Service (see Public Service Law § 4) that has jurisdiction over "telephone corporations" (see §§ 5{1][d]; 2[17]). This includes "every telephone line which lies wholly within the state and that part within the state of New York of every telephone line which lies partly within and partly without the state and to the persons or corporations owning, leasing or operating any such telephone" (Public Service Law § 5[1][d]).
Beginning in 1998, plaintiff's predecessor, a provider of local and long distance telephone and data services, began filing UBT returns as a vendor of utility services. At some point, plaintiff concluded that it was operating "subject to the supervision" of the PSC, and that, as a result, it was a "utility" as defined in Admin Code § 11-1101(6)and was therefore exempt from the UBT. It sought a refund of UBT taxes paid for tax years 2008-2010. Defendant Department of Finance (DOF) refunded amounts for tax years 2008 and 2009, but subsequently issued Notices of Deficiency to recover those sums, plus interest. DOF denied plaintiff's request for a refund of UBT taxes paid for tax year 2010. Its position on the Notices of Deficiency and denial of plaintiff's refund request for tax year 2010 was that plaintiff was not a "utility" as defined by statute and hence was subject to the UBT.
Plaintiff then brought this action pursuant to CPLR 3001 seeking a declaration that it should be classified as a utility subject only to the Utility Tax. Plaintiff contends that since it paid the UBT as well as the Utility Tax for the tax years 2008-2010, it is entitled to a refund of taxes paid pursuant to the UBT for those years.
Defendants opposed the motion and cross-moved for summary judgment, arguing that plaintiff is not "supervised" by the PSC within the meaning of the Admin Code's Utility Tax provisions. Defendants contended that plaintiff is only subject to "light regulation" by the PSC, a designation reserved for companies subject to market-driven competition and is therefore subject to both the Utility Tax and the UBT.
The motion court denied plaintiff's motion and granted defendants' cross motion, declaring that plaintiff is not "subject to the supervision" of the PSC and is not a "utility" within the meaning of the code and, as a result, is subject to both the Utility Tax and the UBT.
The key issue in this case is whether plaintiff, an unincorporated business, is a vendor of utility services subject to both the Utility Tax and UBT, or a utility subject to the Utility Tax but exempt from the UBT. The resolution of this issue rests on the interpretation of the language in the relevant taxing statutes.
The first issue raised is which party has the burden of proof in this matter. In determining whether "property, income, a transaction or event" is subject to taxation, a statute that levies a tax is construed most strongly against the government and in favor of the citizen (see Matter of Grace v New York State Tax Commn., 37 NY2d 193, 196 [1975]). This implies that the burden [*2]of proof on the applicability of the tax is on defendants. However, although plaintiff argues in essence that the issue is a choice between two mutually exclusive taxing schemes, we agree with defendants that the language of the statutes is not mutually exclusive, but creates an exemption from the UBT if the entity is classified as a "utility." It is clear that the UBT applies to plaintiff in the absence of an exemption because its scope includes all unincorporated businesses within the City. Whether plaintiff is exempt from the UBT because it should be classified as a utility is the issue before us. Tax exclusions are never presumed or preferred, and before a taxpayer may have the benefit of one, the taxpayer must establish that it comes within the language of the exclusion. Further, the taxpayer must identify a provision of law plainly creating the exemption (see Matter of Charter Dev. Co., L.L.C. v City of Buffalo, 6 NY3d 578, 582 [2006]; Matter of Mobil Oil Corp. v Finance Adm'r. of City of N.Y., 58 NY2d 95, 99 [1983]).
Thus, a taxpayer claiming an exclusion or exemption bears a heavy burden of establishing that clear and unambiguous statutory language creates such an entitlement (Astoria Fed. Sav. & Loan Assn. v State of New York, 222 AD2d 36, 42 [2d Dept 1996], lv denied 89 NY2d 807 [1997], cert denied 522 US 808 [1997]).
Since the issue here is whether plaintiff is an entity subject to a statutory exemption, the burden is on plaintiff to prove that it is entitled to the exemption.
We now turn to the question whether plaintiff falls within the Administrative Code's definition of a "utility." Plaintiff contends that the only conclusion that can be derived from the plain and ordinary language of the relevant statutory language is that it is a "utility," and thus exempt from the UBT. Plaintiff further argues that there is no need to look beyond the statutory language and that it was error for the motion court to do so.
The Utility Tax draws a distinction between a utility, defined as "[e]very person subject to the supervision of the department of public service" (Admin Code § 11-1101[6]) and a vendor of utility services, defined as "[e]very person not subject to the supervision of the department of public service . . . who furnishes or sells . . . telecommunications services" (§ 11-1101[7]). The phrase "subject to the supervision of the department of public service" (i.e., the PSC), which is not further defined in the statute, is the key to the resolution of this case. Simply put, if plaintiff is "subject to the supervision" of the PSC, it is a utility exempt from the UBT; if it is not so supervised, it is a "vendor of utility services" not exempt from the UBT.
It order to demonstrate that it is "subject to the supervision" of the PSC, plaintiff alleges that, among other things, it is a telephone corporation required to comply with telecommunications regulations; it is subject to safety regulation by the PSC; it is required by PSC rules to provide services to hearing-and-speech impaired residents; it is required to file tariffs for local and long distance access based on PSC directives; it is required to comply with PSC orders concerning complaints and disputes; and it is required to file annual reports of gross operating revenues with the PSC. These examples, however, fall short of the type of supervision envisioned by the statute.
Although the language of the respective statutes appears at first glance to be unambiguous, it is nevertheless appropriate to review the legislative history behind their adoption. "The primary consideration of courts in interpreting a statute is to ascertain and give effect to the intention of the Legislature'" (Riley v County of Broome, 95 NY2d 455, 463 [2000], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 92[a], at 177). Generally, the clear words of a statute alone may be evidence of the Legislature's intent (see Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557, 565 [1984]). Nevertheless, the legislative history may be relevant in a statute's interpretation and "is not to be ignored, even if words be clear" (McKinney's Cons Law of NY, Book 1, Statutes § 124, at 252). In such cases, there is no "rule of law" that prohibits a court from using legislative history in construing a statute, no matter how clear the words may appear on "superficial examination" (New York State Bankers [*3]Assn. v Albright, 38 NY2d 430, 437 [1975][internal quotation marks omitted]). Among other things to be considered are "the history of the times, the circumstances surrounding the statute's passage, and . . . attempted amendments" (McKinney's Cons Law of NY, Book 1, Statutes § 124, at 253 [footnotes omitted]).
The Court of Appeals has provided some guidance as to what constitutes "supervision" as used in this State's tax statutes. In Matter of Astoria Gas Turbine Power, LLC v Tax Commn. of City of N.Y. (7 NY3d 451 [2006]), the Court addressed the issue of how the real property and particularly the equipment of a electric power generating plant should be taxed. The Court stated, "[T]he language subject to the supervision of the state department of public service' has been used repeatedly in this State's tax statutes to distinguish between noncompetitive public utilities and other market-driven business organizations" (id. at 455, citing New York Steam Corp v City of New York, 268 NY 137, 147 [1935]; Cable & Wireless v City of N.Y. Dept. of Fin., 190 Misc 2d 410, 416 [Sup Ct, NY County 2001]). Its meaning depends on the type of the enterprise and the nature of the relationship with the PSC. The Court explained that in exchange for compliance with "strict regulation" by the PSC, traditional utilities are afforded certain important advantages not given to competitive enterprises, such as the exercise of monopoly power protecting them against competition (Astoria, 7 NY3d at 455). The Astoria court observed that in light of the various economic advantages given to them for providing necessary public services, noncompetitive public utilities are taxed differently than market-driven business entities. Significantly, the Court noted the difference between the "strict regulation" imposed on public utilities by the PSC, and the "light regulation" imposed on competitive enterprises covering "matters such as enforcement, investigation, safety, reliability and system improvement" (id. [internal quotations marks omitted]), as well as certain "market mitigation measures" (id. at 456 n 2). Such "light regulation" does not constitute the type of "supervision" that defines an entity as a public utility for the purposes of the taxation statutes (id. at 456). The Astoria Court specifically held that the PSC's "regulation of [the plaintiff] is insubstantial when compared to a public utility's and does not subject the company to the supervision of the state department of public service' as contemplated by the Legislature" (id.). The Court concluded, "Because [the plaintiff] is subject to lightened governmental regulation, it cannot be considered a public utility and should not be classified like one" (id.).
The Astoria Court cited favorably to the decision in Cable & Wireless v City of N.Y. Dept. of Fin. (190 Misc 2d 410, 416 [Sup Ct, NY County 2001]). This case merits closer attention.
The question in Cable & Wireless, as it is here, was whether the plaintiff telecommunications firm was a utility or a vendor of utility services. The plaintiff there argued, as plaintiff does here, that, under the plain statutory language, it was "supervised" by the PSC and thus must be classified as a utility. In rejecting plaintiff's argument, the court conducted an extensive review of the legislative history of the statutes and their amendments, including the history of the circumstances surrounding the statutes' initial passage in 1933 and their amendments through the 1940s to more recent times. After holding that plaintiff had the burden of proving that it was a supervised utility and thus exempt from the tax at issue, the court held that "in using the words subject to the supervision of the [PSC],' the City Council did not envision imposing the Utility Tax on gross income on entities such as [the plaintiff] which exhibit none of the characteristics of the monopolies to which the tax was intended to apply" (id. at 418). The plaintiff was therefore not a utility and was not entitled to an exemption from the UBT.
We find the reasoning in Astoria and Cable & Wireless to be equally applicable to the present case. By its own admission, plaintiff is "a competitive entity" that does not enjoy monopoly status. As a result, the "light regulation" by the PSC to which it is subject does not rise to the level of "supervision" necessary to classify it as a utility and thus warrant an [*4]exemption from the UBT.
There is no question that, as the court in Cable & Wireless noted, significant changes that were never envisioned by the original legislation have taken place in the telecommunications industry. Indeed, the evolution of the industry continues, with new methods of telecommunications appearing in and altering the industry at a very rapid pace. These changes may, as plaintiff argues, require a reevaluation of what constitutes a utility. But as plaintiff also candidly acknowledges, changing the definition of utility would require legislative activity rather than judicial action. The Legislature is in the best position to amend the wording of these statutes to address changing industry conditions.
Accordingly, the order of the Supreme Court, New York County (Lynn R. Kotler, J.), entered April 27, 2016, which denied plaintiff's motion for summary judgment declaring that it is subject to the supervision of the New York State Department of Public Service and is therefore liable for the City utility tax and not the City unincorporated business income tax, and granted defendants' motion for summary judgment declaring that plaintiff is not a utility within the meaning of the City utility tax code and is therefore liable for both the utility tax and the unincorporated business income tax, should be affirmed, with costs.
All concur.
Order, Supreme Court, New York County (Lynn R. Kotler, J.), entered April 27, 2016, affirmed, with costs.
Opinion by Sweeny, J.P. All concur.
Sweeny, J.P., Mazzarelli, Moskowitz, Manzanet-Daniels, Kapnick, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JUNE 27, 2017
CLERK